IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FEDERAL NATIONAL MORTGAGE )
ASSOCIATION, )
)
        Plaintiff, )
)    1:13cv987
  v. )
)
QUICKSILVER LLC; MICHAEL A. )
FALK; HARRY S. FALK; and )
MICHAEL A. FALK, as TRUSTEE OF )
THE TRUST DATED 10-26-1989, )
HAVING THE TAX ID NUMBER 65- )
6043718 (AKA "THE CHARLOTTE )
FALK IRREVOCABLE TRUST"), )
)
        Defendants. )

## **AMENDED MEMORANDUM ORDER**[1]

This action arises out of a refinancing loan for commercial property located in North Carolina (the "disputed property"). Plaintiff Federal National Mortgage Association ("Fannie Mae") alleges fraud, negligent misrepresentation, unfair and deceptive trade practices, breach of contract, breach of warranty, and piercing of the corporate veil against Defendants Quicksilver LLC ("Quicksilver"), Michael A. Falk, Harry S. Falk, and Michael A. Falk as trustee of the trust dated 10-26-1989, also known as the Charlotte Falk Irrevocable Trust ("the Trust"). Various dismissal motions by Defendants are before the court. (Doc.

---

[1] This memorandum order amends the memorandum order entered on September 30, 2014 (Doc. 18) and thus constitutes the current, controlling decision in the case.

12.) For the reasons set forth below, the court will stay the action for ninety days pending the potential disposition of a very closely related State court action between many of the parties herein that may resolve, or at least make more manageable, the issues now before the court.

I. BACKGROUND

Central to the dispute between the parties is the priority of their respective liens on the disputed property. The details of the State court litigation can be found in Falk v. Fannie Mae, 738 S.E.2d 404, 406-07 (N.C. Ct. App. 2013) (the "State court action"). For comprehensibility, the court will summarize the proceedings thus far in this court and the North Carolina State courts.

Quicksilver sought refinancing with Fannie Mae of its debt on the disputed property.[2] Before refinancing, there were two outstanding deeds of trust on the property: a senior lien by Wachovia, and a junior lien by the Trust. Fannie Mae alleges that Quicksilver defaulted on its loan from the Trust virtually from the loan's inception. (Compl. ¶¶ 24-25.) The trustee of the Trust is Michael Falk, who is also one of the two members and managers of Quicksilver. The other member and manager of Quicksilver is Harry Falk, Michael's son.

---

[2] The refinancing was originally with Lend Lease Mortgage Capital, L.P., which immediately assigned its interest to Fannie Mae. (See Compl. ¶¶ 29, 40.)

Fannie Mae alleges that, in the refinancing negotiations, the Falks represented that Fannie Mae would receive a first lien on the property, having priority over the lien of the Trust. (Id. ¶¶ 30-32.) However, when Quicksilver signed a deed of trust on the property in favor of Fannie Mae, the Trust's lien still existed and was never subordinated to Fannie Mae's. (Id. ¶¶ 36-41.) Later, the Falks transferred their ownership interests in Quicksilver to the Trust, making the Trust both the beneficiary of the deed of trust and the sole owner of the borrower, Quicksilver. (Id. ¶¶ 43-44.)

Quicksilver, wholly owned by the Trust, ultimately defaulted on its loan from Fannie Mae. (Id. ¶ 45.) After an unsuccessful demand for payment, Fannie Mae foreclosed on the property and purchased it at a public foreclosure sale. (Id. ¶ 46.) After the sale, the Trust initiated foreclosure proceedings in North Carolina State court. The Trust also filed a declaratory judgment action seeking a declaration that it held a valid first lien on the property. (Id. ¶ 48.) Fannie Mae sought to halt the foreclosure, and ultimately a North Carolina superior court granted summary judgment in favor of Fannie Mae, holding that the Trust's deed of trust had expired under N.C. Gen. Stat. § 45-37(b). (Compl. ¶ 50); see Falk, 738 S.E.2d 404, 408.

The Trust appealed that decision in the State court action to the North Carolina Court of Appeals. (Compl. ¶ 51.) On March 5, 2013, the court of appeals reversed the trial court. (Id.) The court of appeals held that the Trust's lien had expired under the statute, but that the statute was unconstitutional as applied to the Trust's lien. Falk, 738 S.E.2d at 408–10. This ruling made the Trust's lien senior to Fannie Mae's.

After Fannie Mae lost in the North Carolina Court of Appeals, it filed this federal action against Quicksilver, the Falks individually, and Michael Falk as trustee of the Falk Trust. The Falks, in their individual capacities, were not parties to the State court litigation. See Falk, 738 S.E.2d at 405–06. Fannie Mae alleges six causes of action: fraud as to the Falks, negligent misrepresentation as to the Falks and Quicksilver, unfair and deceptive trade practices as to the Falks and Quicksilver, breaches of the Key Principal Agreement (as to the Falks) and Fannie Mae Note (as to Quicksilver), breach of warranty as to Quicksilver, and "alter ego liability/piercing the corporate veil" as to the Trust. (Compl. ¶¶ 52–111.) Federal jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). (Id. ¶¶ 1–7.) Fannie Mae seeks damages in excess of $75,000, punitive damages, treble damages pursuant to N.C. Gen. Stat. § 75-16, and

4

attorneys' fees. (Id. at 20-21.) Fannie Mae's claims in this court assume the validity of the Trust's lien and are premised on Defendants' fraud and other wrongful actions during the loan process. (See id. ¶¶ 52-111.)

After losing before the North Carolina Court of Appeals in the State court action, Fannie Mae sought a writ of discretionary review from the North Carolina Supreme Court. Although the parties have not advised the court, it is now apparent that the North Carolina Supreme Court has set the case for oral argument next week, on October 6, 2014.

## II. ANALYSIS

Defendants' motion seeks, among other things, a stay of all proceedings. Specifically, Defendants seek to have the court abstain under the doctrine of Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). The court declines to abstain under Colorado River at this time. However, given the pendency of the State court proceedings before the North Carolina Supreme Court, this court will stay the case under its own inherent powers to do so in control of its docket.

As the Supreme Court of the United States has made clear, federal district courts have an inherent power to stay proceedings before them. This "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and

effort for itself, for counsel, and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936). When duplicative proceedings are pending in various courts, a stay does not depend on a showing that two lawsuits are the same "and the issues identical." Id. Although parallel proceedings are required under Colorado River abstention, the inherent power recognized in Landis has not been abrogated by the Colorado River doctrine. See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 21 n.23 (1983).

A court's decision to grant a stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis 254-55; accord Maryland v. Universal Elections, Inc., 729 F.3d 370, 375 (4th Cir. 2013) ("The grant or denial of a request to stay proceedings calls for an exercise of the district court's judgment 'to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.'" (quoting United States v. Ga. Pac. Corp., 562 F.2d 294, 296 (4th Cir. 1977)). When a district court considers a stay, "it should record the basis for its decision, including the factors it considered," in order to make "an adequate record of the decisional process." Muhammad v. Warden, Baltimore City Jail, 849 F.2d 107, 113 (4th Cir. 1988).

The Fourth Circuit has not enumerated the factors that a district court should consider in an application for a stay, but many courts have noted at least three important considerations: "it must be clear that [1] the interests of justice require it, [2] that adjudication of the claim would be a waste of judicial effort, and [3] that the plaintiff will not be substantially harmed by the delay." 555 M Mfg., Inc. v. Calvin Klein, Inc., 13 F. Supp. 2d 719, 724 (N.D. Ill. 1998) (citing Hess v. Gray, 85 F.R.D. 15, 27 (N.D. Ill. 1979)).

These three factors are met in this case. Fannie Mae has only brought State-law claims in its federal lawsuit. The interests of justice support a stay because, if the North Carolina Supreme Court were to reverse the judgment of the North Carolina Court of Appeals, many of Fannie Mae's claims in this case would be subject to dismissal for lack of injury. Fannie Mae has explicitly staked out the position that the entire federal lawsuit is predicated on "the North Carolina Court of Appeals' Opinion [being] the controlling law with respect to the priority and validity" of the Trust's lien. (Doc. 14 at 8.) Fannie Mae has acknowledged the possibility that reversal by the North Carolina Supreme Court could affect the viability of its claims. (Id. at 9.) While such a possibility was merely speculative when Fannie Mae filed its complaint with this court, this has become a real possibility since the North Carolina

7

Supreme Court agreed to hear the appeal. For this same reason, there is a significant risk that a decision by this court would prove to be a waste of judicial resources if the Trust's lien is dissolved by the Supreme Court of North Carolina.

Fannie Mae will also not suffer substantial harm by a stay of the federal court proceedings. The stay in this case is narrow and definite, see infra, and it is Fannie Mae that both filed the federal complaint and sought review by the North Carolina Supreme Court. This duplication of judicial resources is, at least in part, the making of Fannie Mae. Moreover, because the State court proceedings only involve related issues and not the same claims as this case, the risk of preclusion is not nearly as substantial as in the Colorado River context, where a stay or dismissal of the federal case means that "the state court's judgment on the issue would be res judicata." Moses H. Cone Mem'l Hosp., 460 U.S. at 10; cf. Cottrell v. Duke, 737 F.3d 1238, 1249 (8th Cir. 2013) (holding that Colorado River standard is appropriate where a stay has the same effect as a dismissal because of res judicata effects of State court judgment).

Other factors, specific to this case, warrant a stay. First, not only was the State court action brought long before the federal court action, which supports an application for a stay, the State court proceedings have progressed significantly

further.  Id. at 22.  The State court proceedings began first and reached not one, but two judgments before Fannie Mae filed suit in this court - one at the trial court level and the other at the intermediate appellate court.

Second, when a prior proceeding with the potential to affect a later related proceeding is set to be resolved on appeal, the wise administration of justice suggests a stay is appropriate.  For example, when a federal action will possibly be affected by a pending decision of a federal appellate court, many courts have found stays of the later, related actions to be appropriate.  See, e.g., Hickey v. Baxter, No. 87-2028, 1987 WL 39020, at *1 (4th Cir. 1987) (per curiam) ("We find that the district court acted within its discretion in staying proceedings while awaiting guidance from the [United States] Supreme Court in a case that could decide relevant issues." (emphasis added)); McCrory v. North Carolina, No. 1:14CV65, 2014 WL 2048068, at *1 (W.D.N.C. May 19, 2014) (staying proceedings pending resolution of related case by the Fourth Circuit); Couick v. Actavis, Inc., No. 3:09-CV-210-RJC-DSC, 2011 WL 248008, at 1 (W.D.N.C. Jan. 25, 2011) (staying case pending resolution of related issue by the United State Supreme Court and explaining, "If the Supreme Court finds that state law is preempted on the issue in question, then this Plaintiff's claims will likely need to be dismissed.  If on the other hand, the

Supreme Court answers the preemption question in the negative, the scope of the issues and arguments in this case may still be narrowed."). In this case, there is little reason the outcome should be any different when a related issue is pending in a State appellate court, as other courts have noted. See, e.g., Landis, 299 U.S. at 256 ("True, a decision in the cause then pending in New York may not settle every question of fact and law in suits by other companies, but in all likelihood it will settle many and simplify them all."); Navigators Specialty Ins. Co. v. Med. Benefits Adm'rs of MD, Inc., No. CIV.A. ELH-12-2076, 2014 WL 1918710, at *1–2 (D. Md. May 12, 2014).

All relevant factors in this case favor a stay of proceedings. The remaining issue is the contours of the stay. As the Fourth Circuit has noted,

> In considering the propriety of a stay of proceedings, the court should be specifically mindful of the Supreme Court's admonition in Landis v. North American Co., 299 U.S. 248, 256–57, 57 S. Ct. 163, 166–67, 81 L.Ed. 153 (1936), that a stay may not be "immoderate in extent" nor "oppressive in its consequences" and that it is "immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible to prevision and description."

Muhammad, 849 F.2d at 113. When a district court issues a stay of "indefinite duration," its decision can be an abuse of the discretion accorded it. Landis, 299 U.S. at 255.

Mindful of these strictures, the court will issue a limited stay with the conditions that follow.

IT IS THEREFORE ORDERED that these proceedings are STAYED for ninety (90) days, effective immediately.  By the end of the ninety-day period, the parties shall submit a joint report as to the status of the proceedings in the State court action, which shall include a recommendation as to whether to continue or dissolve the stay.  Should the Supreme Court of North Carolina issue a ruling on the State court action during the stay, the parties shall immediately advise the court of the ruling and explain, in each party's view, the effect, if any, of the ruling on the present action.  Of course, any party may move at any time to dissolve the stay, but only after first meeting and conferring with all other parties.

 /s/   Thomas D. Schroeder  
United States District Judge

October 1, 2014