IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:13-cv-987 |
| QUICKSILVER LLC; MICHAEL A. FALK; HARRY S. FALK; and MICHAEL A. FALK, as Trustee of the Trust Dated 10-26-1989, Having the Tax ID Number 65-6043718 (AKA "The Charlotte Falk Irrevocable Trust"), | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff Federal National Mortgage Association ("Fannie Mae") brings this as a diversity action against Defendants Quicksilver LLC ("Quicksilver"), Michael A. Falk, Harry S. Falk, and Michael A. Falk as trustee of the Charlotte Falk Irrevocable Trust ("Falk Trust"), alleging various state law claims arising out of the refinancing of a loan for commercial property. Before the Court is Defendants' Motion to Dismiss. (ECF No. 12.) For the reasons below, Defendants' motion is granted in part and denied in part.

## I.    BACKGROUND[1]

Michael Falk and Harry Falk are the sole member/managers of Quicksilver. (Compl.

---

[1] The Court considers the Complaint, documents attached to the Complaint, and pleadings from a state court action that is relevant to the res judicata issue in this case. When evaluating res judicata on a motion to dismiss, district courts can consider state court records even when they are not referenced in the complaint, without converting the motion to dismiss to a motion for summary judgment. See Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396–97 (4th Cir. 2006) (per curiam).

¶ 17, ECF No. 1.)  Michael Falk is also the sole trustee of the Falk Trust.  (Id. ¶ 12.)  In the early 1990s, the Falks purchased certain commercial property as directors of a company called Quicksilver Corporation.  (See id. ¶¶ 13–14.)  They then created Quicksilver, which acquired the property from Quicksilver Corporation.  (Id. ¶¶ 17–18.)  To pay off Quicksilver Corporation's purchase money loan, Quicksilver borrowed money from Wachovia Bank and the Falk Trust.  (Id. ¶¶ 19–20.)  Both loans were secured by deeds of trust on the property, executed by Harry Falk as member/manager of Quicksilver.  (Id. ¶¶ 19, 22.)  Quicksilver then defaulted on its loan from the Falk Trust.  (Id. ¶ 25.)  Several years later, in 1999, Quicksilver borrowed additional funds from Wachovia, also secured by a deed of trust on the property.  (Id. ¶¶ 26–27.)  As a condition of this loan, Quicksilver and the Falk Trust agreed to subordinate the Falk Trust's deed of trust (the "Falk Deed") to Wachovia's deed of trust, ensuring that Wachovia's lien had priority over the Falk Trust's lien.  (Id. ¶¶ 26, 28.)

In 2001, Quicksilver refinanced the 1999 Wachovia loan with a government-guaranteed loan that was immediately assigned to Fannie Mae.[2]  (See id. ¶¶ 29, 40, 42.)  As a condition of the loan, Fannie Mae requested a first lien deed of trust superior to all other liens on the property.  (Id. ¶ 31.)  The Falks were allegedly aware of this condition and made multiple written representations throughout the loan application and closing process that the loan would be secured by a first lien deed of trust on the property.  (Id. ¶¶ 32–33.)  Among other documents, the Falks executed a note (the "Fannie Mae Note") and a deed of trust (the "Fannie Mae Deed") in connection with the loan.  (Id. ¶¶ 34, 37.)  The Fannie Mae Deed included a provision stating, "Borrower represents and warrants . . . that the

---

[2] The loan was made by Lend Lease Mortgage Capital, L.P.  (Compl. ¶ 29, ECF No. 1.)  During the loan application and closing process, the Falks were aware that the loan would be assigned to Fannie Mae.  (Id. ¶ 30.)

Case 1:13-cv-00987-LCB-JEP   Document 27   Filed 12/10/15   Page 2 of 23

Mortgaged Property is unencumbered." (Id. ¶ 34.) Two other documents also represented that the Fannie Mae Deed was a "first lien" on the property. (Id. ¶ 35.) In reliance on these written representations, the loan proceeds were disbursed. (Id. ¶ 39.) At the time of the written representations, however, the Falk Deed was still an encumbrance of record on the property. (Id. ¶ 36.)

In 2008, the Falks transferred their ownership interests in Quicksilver to the Falk Trust. (Id. ¶ 43.) As a result of the transfer, the Falk Trust became the sole owner of Quicksilver, its borrower. (Id. ¶ 44.) Quicksilver was still in default on the Falk Trust's note (the "Falk Note") at the time and subsequently defaulted on the Fannie Mae Note as well. (Id. ¶¶ 44–45.) Fannie Mae demanded payment of all outstanding sums due, but Quicksilver failed to pay. (Id. ¶ 45.)

In 2011, Fannie Mae foreclosed on the property. (Id. ¶¶ 45–46.) As the highest bidder at the foreclosure sale, Fannie Mae obtained title to the property "[s]ubject to any and all matters superior to the lien of the [Fannie Mae Deed]." (Substitute Trustee's Deed 2, ECF No. 1-15; see Compl. ¶ 46, ECF No. 1.) The Falk Trust then demanded over $3.5 million from Fannie Mae to pay off the Falk Note, which had accrued interest on a principal amount of $600,000. (Compl. ¶ 47, ECF No. 1.) Fannie Mae declined to pay. (Id.)

Later in 2011, the Falk Trust filed suit in state court against Fannie Mae and others, seeking a declaration that the Falk Deed was "a valid and enforceable lien" on the property. (State Compl. ¶ 43, ECF No. 14-4; see Compl. ¶ 48, ECF No. 1.) Fannie Mae filed an answer, counterclaims, and a third-party complaint against the Falk Trust and Quicksilver, seeking a declaration that the Fannie Mae Deed was a first priority lien on the property, that Fannie Mae's foreclosure extinguished any lien created by the Falk Deed, and that Fannie

Mae held title to the property free and clear of any lien created by the Falk Deed. (State Countercls. 15, ECF No. 13-7.) The trial court granted summary judgment in favor of Fannie Mae, concluding that the Falk Deed had expired under North Carolina law. (Compl. ¶ 50, ECF No. 1.) The North Carolina Court of Appeals reversed the decision of the trial court, holding that the Falk Trust held a valid lien, even after Fannie Mae's foreclosure, and had the right to foreclose on the property. Falk v. Fannie Mae, 738 S.E.2d 404, 411 (N.C. Ct. App. 2013), rev'd, 766 S.E.2d 271 (N.C. 2014). The North Carolina Supreme Court later reversed the Court of Appeals, holding that a state statute "acted to terminate the [Falk Deed] and permitted Fannie Mae to foreclose on the property unencumbered." Falk v. Fannie Mae, 766 S.E.2d 271, 280 (N.C. 2014).

In 2013, while the state court action was pending before the North Carolina Supreme Court, Fannie Mae filed suit in this Court. Fannie Mae's Complaint asserts six claims. Claim 1 alleges that the Falks engaged in fraud during the loan application and closing process by representing that the property was unencumbered and that the Fannie Mae Deed would be a first lien on the property. (Compl. ¶¶ 52–66, ECF No. 1.) Claim 2 alleges that the Falks and Quicksilver engaged in negligent misrepresentation during the loan application and closing process by representing that the property was unencumbered and that the Fannie Mae Deed would be a first lien on the property. (Id. ¶¶ 67–77.) Claim 3 alleges that the Falks' and Quicksilver's acts of fraud, misrepresentation, and omission constitute unfair and deceptive trade practices under Section 75-1.1 of the North Carolina General Statutes. (Id. ¶ 78–83.) Claim 4 alleges that the Falks and Quicksilver, pursuant to the Fannie Mae Note and a separate contractual agreement, are liable for the loss and damages Fannie Mae suffered as a result of the Falks' fraud and misrepresentations and are liable for the repayment of all

4

indebtedness for transferring the Falks' interests in Quicksilver to the Falk Trust. (See id. ¶¶ 84–95.) Claim 5 alleges that Quicksilver breached warranties of title in the Fannie Mae Deed by failing to defend Fannie Mae against the Falk Trust's challenges to Fannie Mae's title. (See id. ¶¶ 96–103.) Claim 6 alleges that the Falk Trust is liable for all claims against Quicksilver through piercing the corporate veil. (See id. ¶¶ 104–11.)

Defendants moved to dismiss this action for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure or for failure to state a claim under Rule 12(b)(6). (Defs.' Mot. 1–2, ECF No. 12.) Alternatively, Defendants moved to stay the case. (Id. at 2.) On October 1, 2014, this Court entered a stay pending resolution of the state court litigation by the North Carolina Supreme Court. (See Am. Order 5, 11, ECF No. 19; Order 2, ECF No. 21.) The stay was lifted on February 27, 2015, after which the parties submitted supplemental briefing on the issue of whether the state court resolution precludes part or all of the present action under the doctrine of res judicata. (See Defs.' Res Judicata Br., ECF No. 25; Pl.'s Res Judicata Br., ECF No. 26.) Defendants' Motion to Dismiss is now ripe for review.

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(1):  Lack of Subject-Matter Jurisdiction

Subject-matter jurisdiction relates to the court's power to hear a case. Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012) (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)). A motion under Rule 12(b)(1), which governs dismissal for lack of subject-matter jurisdiction, raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." Id. at 452. The burden of establishing subject-matter jurisdiction is

on the plaintiff. <u>Evans v. B.F. Perkins Co.</u>, 166 F.3d 642, 647 (4th Cir. 1999). When evaluating a Rule 12(b)(1) motion to dismiss, the court may consider evidence outside the pleadings and should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." <u>Id.</u> (quoting <u>Richmond, Fredericksburg & Potomac R.R. Co. v. United States</u>, 945 F.2d 765, 768 (4th Cir. 1991)). Once the court determines it lacks subject-matter jurisdiction over a claim, it must dismiss that claim. <u>See</u> <u>Jones v. Calvert Grp., Ltd.</u>, 551 F.3d 297, 301 (4th Cir. 2009). Irrespective of whether the parties raise the issue of subject-matter jurisdiction, the court has an independent obligation to ensure it possesses jurisdiction before proceeding. <u>Constantine v. Rectors & Visitors of George Mason Univ.</u>, 411 F.3d 474, 480 (4th Cir. 2005).

### B. Rule 12(b)(6): Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). <u>Francis v. Giacomelli</u>, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible when the complaint alleges facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> When evaluating the complaint, the court views the facts "in the light most favorable to the plaintiff." <u>United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency</u>, 745 F.3d 131, 136 (4th Cir. 2014).

## III.  ANALYSIS

### A.  Rule 12(b)(1):  Lack of Subject-Matter Jurisdiction

The Court begins with the threshold issue of subject-matter jurisdiction.  Fannie Mae seeks to invoke the diversity jurisdiction of this Court.  (Compl. ¶ 7, ECF No. 1.)  Diversity jurisdiction is present in cases where the amount in controversy exceeds $75,000 and the parties are completely diverse, 28 U.S.C. § 1332(a), meaning no plaintiff is a citizen of the same state as any defendant, Johnson v. Am. Towers, LLC, 781 F.3d 693, 704 (4th Cir. 2015).  Defendants argue that the Court lacks diversity jurisdiction because the statutory amount-in-controversy requirement has not been met.  (See Defs.' Mem. 6–8, ECF No. 13.)

"When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith."  Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 553 (2014).  "If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if 'it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed.'"  JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)).  Defendants therefore bear a heavy burden when seeking to dismiss a diversity action for lack of a sufficient amount in controversy.  Id.  To prevail, defendants "must show 'the legal impossibility of recovery' to be 'so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim.'"  Id. (quoting Wiggins v. N. Am. Equitable Life Assurance Co., 644 F.2d 1014, 1017 (4th Cir. 1981)).  Additionally, "[i]f the complaint in good faith alleges a sufficient amount in controversy, '[e]vents occurring subsequent' to the filing of the complaint 'which reduce the amount recoverable below the statutory limit do not oust jurisdiction.'"  Id. (second alteration in original) (quoting St. Paul Mercury, 303 U.S.

at 289–90); see Porsche Cars N. Am., Inc. v. Porsche.net, 302 F.3d 248, 255–56 (4th Cir. 2002) (explaining that courts evaluate the existence of diversity jurisdiction at the time of filing, "regardless of later changes in originally crucial facts such as the parties' citizenship or the amount in controversy").

Here, Fannie Mae alleges it has suffered damages exceeding $75,000. (Compl. ¶¶ 65, 77, 81, 103, ECF No. 1.) Defendants do not contend, and the Court has no basis to find, that Fannie Mae made these allegations in bad faith. Rather, Defendants argue that at the time of filing, Fannie Mae had not suffered any harm and therefore could not recover its claimed damages. (Defs.' Mem. 7, ECF No. 13.) The Court thus considers whether Defendants have met their burden of establishing, to a legal certainty, that Fannie Mae could not, at the time of filing, possibly recover damages in excess of $75,000, so as to negate its good faith in alleging the amount in controversy required for diversity jurisdiction. See JTH Tax, 624 F.3d at 638.

Defendants argue that "despite Plaintiff's naked allegations of its supposed damages, the amount in controversy element is not met because although Plaintiff might sustain damages sometime in the future, to date, it has had no compensable damages." (Defs.' Mem. 7, ECF No. 13.) They argue that each of Fannie Mae's claims arises from Defendants' alleged misrepresentations and that, consequently, there are no damages until the state courts affirm the validity of the Falk Deed and the Falk Trust's right to foreclose on the property. (Id.) Defendants cite no legal authority for this argument.

Defendants' argument fails for two reasons. First, at the time Fannie Mae filed this action, the North Carolina Court of Appeals had affirmed the validity of the Falk Deed and the Falk Trust's right to foreclose on the property. Falk, 738 S.E.2d at 411. Though

Defendants acknowledge the Court of Appeals' decision reversing the trial court's judgment and remanding the case, they nevertheless contend that Fannie Mae had a trial court judgment in its favor at the time it filed this action because the trial court had not yet complied with the remand order. (Defs.' Mem. 7, ECF No. 13; see Defs.' Reply 2, ECF No. 17.) However, "[w]here an appellate court decides questions and remands a case for further proceedings, its decisions on those questions become the law of the case." Boyce & Isley, PLLC v. Cooper, 710 S.E.2d 309, 316 (N.C. Ct. App. 2011) (quoting Sloan v. Miller Bldg. Corp., 493 S.E.2d 460, 463 (N.C. Ct. App. 1997)). On remand, it is well established that the trial court "must follow the mandate of [the] appellate court . . . without variation or departure." In re S.R.G., 684 S.E.2d 902, 904 (N.C. Ct. App. 2009) (quoting In re R.A.H., 641 S.E.2d 404, 407 (N.C. Ct. App. 2007)). Therefore, at the time of filing, the law of the case was that the Falk Trust held a valid lien superior to Fannie Mae's lien and that it had the right to foreclose on the property under the Falk Deed. See Falk, 738 S.E.2d at 411. Though the North Carolina Supreme Court later reversed this ruling, Falk, 766 S.E.2d at 280, the reversal does not save Defendants' argument, as jurisdiction is determined at the time of filing. See JTH Tax, 624 F.3d at 638; Porsche, 302 F.3d at 255.

Second, Defendants' argument regarding Fannie Mae's amount in controversy fails to consider the possibility that Defendants' alleged actions could harm Fannie Mae in ways other than encumbering its title to the property. Defendants fail to discuss, at all, possible harm that could result based on Fannie Mae's claims that the Falks transferred their interest in Quicksilver to the Falk Trust and that Quicksilver failed to defend Fannie Mae's title against the Falk Trust's state court challenge.

Defendants' unsupported arguments as to why Fannie Mae cannot establish harm do

9

not satisfy its heavy burden in seeking to dismiss this action. Defendants have failed to show that it is legally impossible for Fannie Mae to recover claimed damages in excess of $75,000 so as to negate Fannie Mae's good faith in asserting its amount in controversy. Accordingly, the Court denies Defendants' request to dismiss this case for lack of subject-matter jurisdiction.[3]

## B. Rule 12(b)(6): Failure to State a Claim

The Court next considers Defendants' arguments for dismissal under Rule 12(b)(6).[4] Defendants seek to dismiss each of Fannie Mae's claims for failing to state a claim upon which relief can be granted or for being barred by applicable statutes of limitations.

*Claims 1 to 3: Fraud, Negligent Misrepresentation, and Unfair and Deceptive Trade Practices*

Fannie Mae's claims of fraud, negligent misrepresentation, and unfair and deceptive trade practices arise out of Defendants' alleged representations that the property was unencumbered and that Fannie Mae would hold a first priority lien on the property. (See Compl. ¶¶ 52–83, ECF No. 1.) Defendants argue that these claims are barred by state statutes of limitations. (See Defs.' Mem. 12–14, ECF No. 13.) In diversity jurisdiction cases, federal courts apply federal procedural law and state substantive law. Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co., 736 F.3d 255, 261 n.3 (4th Cir. 2013). North Carolina law therefore provides the applicable statutes of limitations in this case. See Castillo v.

---

[3] Defendants acknowledge that the North Carolina Supreme Court decision in the state court action has rendered moot their additional argument for lack of subject-matter jurisdiction based on the Rooker-Feldman doctrine. (Second Joint Status Rpt. 3, ECF No. 22; see Defs.' Mem. 8–12, ECF No. 13.) The Court therefore does not address this argument.

[4] Defendants acknowledge that the North Carolina Supreme Court decision in the state court action has rendered moot their additional argument for abstention based on the Colorado River doctrine. (Second Joint Status Rpt. 3, ECF No. 22; see Defs.' Mem. 16–20, ECF No. 13.) The Court therefore does not address this argument.

Emergency Med. Assocs., P.A., 372 F.3d 643, 646 (4th Cir. 2004).

"The statute of limitations is an affirmative defense that may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim." United States v. Kivanc, 714 F.3d 782, 789 (4th Cir. 2013). However, a Rule 12(b)(6) motion "tests the sufficiency of the complaint" and "generally cannot reach the merits of an affirmative defense." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). Thus, "dismissal under Rule 12(b)(6) based on the statute of limitations occurs in 'relatively rare circumstances.'" Dickinson v. Univ. of N.C., 91 F. Supp. 3d 755, 763 (M.D.N.C. 2015) (quoting Goodman, 494 F.3d at 464). "To succeed on a statute-of-limitations defense at this stage, all facts necessary to show the time bar must clearly appear 'on the face of the complaint.'" Id. (quoting Goodman, 494 F.3d at 464). The burden of proving the defense rests with the defendant. Id.

Under North Carolina law, claims of fraud and negligent misrepresentation are subject to a three-year statute of limitations. N.C. Gen. Stat. § 1-52(5), (9) (2015); Ussery v. Branch Banking & Trust Co., 777 S.E.2d 272, 277 n.5 (N.C. 2015). Unfair and deceptive trade practices claims are barred after four years. N.C. Gen. Stat. § 75-16.2. "A cause of action generally accrues and the statute of limitations begins to run as soon as the right to institute and maintain a suit arises." Hunter v. Guardian Life Ins. Co. of Am., 593 S.E.2d 595, 601 (N.C. Ct. App. 2004) (quoting Penley v. Penley, 332 S.E.2d 51, 62 (N.C. 1985)). For claims of fraud, "the statute of limitations begins to run from the discovery of the fraud or from the time it should have been discovered in the exercise of reasonable diligence." Id. (quoting Calhoun v. Calhoun, 197 S.E.2d 83, 85 (N.C. Ct. App. 1973)). The same principle applies to fraud-based claims of unfair and deceptive trade practices. See Cebula v. Givens Estates, Inc., 763 S.E.2d 338 (N.C. Ct. App. 2014) (unpublished table decision); Trantham v.

<u>Michael L. Martin, Inc.</u>, 745 S.E.2d 327, 334 (N.C. Ct. App. 2013). For claims of negligent misrepresentation, the cause of action accrues when "first, the claimant suffers harm because of the misrepresentation, and second, the claimant discovers the misrepresentation." <u>Trantham</u>, 745 S.E.2d at 334.

The Court must therefore determine whether it is apparent, on the face of the Complaint, when Fannie Mae discovered or should have discovered that the property was encumbered and that Fannie Mae did not hold a first priority lien on the property. Defendants argue that Fannie Mae knew or should have known of the alleged fraud and misrepresentation at the time the loan closed in 2001. (Defs.' Mem. 13, ECF No. 13.) The face of the Complaint, however, provides no support for this argument. Rather, Defendants rely on the fact that the Falk Deed was recorded and that Fannie Mae received a title commitment letter providing notice of the existence and priority of the Falk Deed. (<u>Id.</u>)

Neither the recorded Falk Deed nor the title commitment letter allows the Court to conclude that Fannie Mae knew or should have known of the alleged fraud and misrepresentation at the time the loan closed. First, while the Complaint does allege that the Falk Deed was recorded, (Compl. ¶ 22, ECF No. 1), it does not allege that Fannie Mae was aware of the recorded deed. Further, "[w]hen plaintiff should, in the exercise of reasonable care and due diligence, have discovered the fraud is a question of fact to be resolved by the jury." <u>Hunter</u>, 593 S.E.2d at 601 (alteration in original) (quoting <u>Feibus & Co. v. Godley Constr. Co.</u>, 271 S.E.2d 385, 392 (N.C. 1980)). Second, though Defendants have attached the title commitment letter to their memorandum supporting the Motion to Dismiss, "[c]onsideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is 'integral to and explicitly relied on in the complaint,' and when 'the

plaintiffs do not challenge [the document's] authenticity.'" <u>Zak v. Chelsea Therapeutics Int'l,</u> <u>Ltd.</u>, 780 F.3d 597, 606–07 (4th Cir. 2015) (second alteration in original) (quoting <u>Am.</u> <u>Chiropractic Ass'n v. Trigon Healthcare, Inc.</u>, 367 F.3d 212, 234 (4th Cir. 2004)). While Fannie Mae does not challenge the authenticity of the title commitment letter, the letter is not integral to any of Fannie Mae's claims, and the Complaint does not include any reference to the letter. The letter therefore falls outside the scope of documents that the Court can properly consider when evaluating a Rule 12(b)(6) motion to dismiss.

The face of the Complaint does not reveal when Fannie Mae discovered or should have discovered Defendants' alleged fraud and misrepresentation. Therefore, the Court will not dismiss Fannie Mae's claims of fraud, negligent misrepresentation, and unfair and deceptive trade practices based on the statute of limitations.[5]

*Claim 4: Breach of Contract*

The Court next considers Fannie Mae's breach of contract claim, which alleges two separate breaches. First, under the Fannie Mae Note, Quicksilver is liable to Fannie Mae for "any loss or damage" resulting from any "fraud or written material misrepresentation" made in connection with the loan. (Compl. ¶ 87, ECF No. 1.) Fannie Mae alleges that Quicksilver breached this provision by representing, during the loan application and closing process, that the property was unencumbered and that Fannie Mae would hold a first priority lien on the

---

[5] In their reply brief, Defendants seek to dismiss these claims for a second reason: that they fail to state a claim under the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. (<u>See</u> Defs.' Reply 5, ECF No. 17.) "While issues not included in the opening brief are generally considered waived," the Court briefly addresses this argument "for the sake of comprehensiveness." <u>Balas v. Huntington Ingalls Indus., Inc.</u>, 711 F.3d 401, 408 n.4 (4th Cir. 2013). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Fannie Mae has done so. Rule 9(b) further provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." <u>Id.</u> Thus, Fannie Mae's general allegations of Defendants' intent to defraud are sufficient under Rule 9(b). Accordingly, the Court rejects Defendants' argument.

property. (Id. ¶ 89.) Second, Quicksilver is also liable under the Fannie Mae Note "for the repayment of all of the Indebtedness" if a controlling interest in Quicksilver is transferred or if the Falks transfer any of their ownership interests. (Id. ¶¶ 87–89.) Fannie Mae alleges that Quicksilver breached this provision when the Falks transferred their interests in Quicksilver to the Falk Trust in 2008. (Id. ¶¶ 93–94.) Fannie Mae also alleges that the Falks are liable for all amounts owed by Quicksilver pursuant to the Key Principal Agreement, a separate document stating that the Falks agree to pay Fannie Mae "all amounts for which [Quicksilver] is personally liable" under the relevant portions of the Fannie Mae Note. (Id. ¶¶ 86, 92, 95.)

Defendants argue that Fannie Mae's breach of contract claim is barred by the statute of limitations, but the parties dispute the applicable limitations period. Defendants contend the statute of limitations is three years to the extent the claim "sounds in fraud or negligent misrepresentation" and one year to the extent Fannie Mae seeks a deficiency judgment. (Defs.' Mem. 14, ECF No. 13.) Fannie Mae contends the applicable statute of limitations is the ten-year period for an action "[u]pon a sealed instrument . . . against the principal thereto," N.C. Gen. Stat. § 1-47(2). (Pl.'s Mem. 15, ECF No. 14.) Here, Fannie Mae does not seek a deficiency judgment to recover the unpaid balance of its debt or allege that the foreclosure failed to yield the full amount due. See Mountain 1st Bank & Trust v. Galdena, LLC, 748 S.E.2d 775 (N.C. Ct. App. 2013) (unpublished table decision) ("A deficiency judgment is an imposition of personal liability on [the] mortgagor for [the] unpaid balance of mortgage debt after foreclosure has failed to yield [the] full amount of due debt." (quoting Hyde v. Taylor, 320 S.E.2d 904, 906 (N.C. Ct. App. 1984))). Rather, Fannie Mae's claim arises from the Defendants' alleged fraud and misrepresentations and the Falks' transfer of

their interests in Quicksilver. (See Compl. ¶¶ 89–95, ECF No. 1.) Because both the Fannie Mae Note and the Key Principal Agreement were signed under seal[6] and because Fannie Mae asserts its claim against the parties that executed those documents, this claim is one upon sealed instruments against the principals to those instruments. The ten-year statute of limitations therefore applies to Fannie Mae's breach of contract claim.

The ten-year statute of limitations begins to run when Fannie Mae's cause of action accrues under the sealed instruments. See Square D Co. v. C.J. Kern Contractors, Inc., 334 S.E.2d 63, 65 (N.C. 1985); Rose v. Vulcan Materials Co., 194 S.E.2d 521, 535 (N.C. 1973). As to the portion of Fannie Mae's claim based on fraud and material written misrepresentation, the Court is unable to determine from the face of the Complaint when this cause of action accrued. Thus, dismissal is not warranted on a Rule 12(b)(6) motion. As to the portion of Fannie Mae's claim based on the transfer of ownership interests in Quicksilver, the Complaint alleges that the Falks transferred their interests to the Falk Trust in 2008. (Compl. ¶ 43, ECF No. 1.) The cause of action therefore accrued in 2008, and Fannie Mae's claim will not be barred until 2018. Because Fannie Mae filed suit in 2013,

---

[6] "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" Zak, 780 F.3d at 606 (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)). Because the Fannie Mae Note and Key Principal Agreement are both attached to the Complaint, the Court considers these documents to determine whether they are under seal. A contract is under seal, as a matter of law, "[i]f it appears without ambiguity on the face of the contract that a party signed under seal." Davis v. Woodlake Partners, LLC, 748 S.E.2d 762, 767 (N.C. Ct. App. 2013) (quoting Cent. Sys., Inc. v. Gen. Heating & Air Conditioning Co. of Greenville, Inc., 268 S.E.2d 822, 824 (N.C. Ct. App. 1980)). Here, the Fannie Mae Note states that Quicksilver "signed and delivered" the Note "as a sealed instrument." (Fannie Mae Note 8, ECF No. 1-11.) The Key Principal Agreement similarly states that the Falks "signed and delivered" the document "as a sealed instrument." (Key Principal Agmt. 2, ECF No. 1-12.)

within the ten-year limitations period, dismissal of this portion of the claim is also not warranted.

*Claim 5: Breach of Warranties of Title*

The Court now turns to Fannie Mae's claim that Quicksilver breached warranties of title in the Fannie Mae Deed. The Fannie Mae Deed includes a covenant that Quicksilver will "warrant and defend" Fannie Mae's title to the property "against all claims and demands."[7] (Compl. ¶ 98, ECF No. 1.) Fannie Mae alleges that Quicksilver breached this warranty by failing to defend Fannie Mae in state court, against the Falk Trust's challenge to Fannie Mae's title. (Id. ¶ 101.) However, the warranty contained in the Fannie Mae Deed protects Fannie Mae only against claims to its title as a lender, not as the new property owner. In North Carolina, "deeds of trust are used in most mortgage transactions, whereby a borrower conveys land to a third-party trustee to hold for the mortgagee-lender." Macon Bank, Inc. v. Gleaner, 770 S.E.2d 114, 120 (N.C. Ct. App. 2015) (quoting Countrywide Home Loans, Inc. v. Reed, 725 S.E.2d 667, 671 (N.C. Ct. App. 2012)). A mortgagee-lender, like Fannie Mae, "does not receive a mere lien on mortgaged real property, but receives legal title to the land for security purposes." Id. (quoting Countrywide, 725 S.E.2d at 671). That is the title Quicksilver warranted to defend—not the title Fannie Mae acquired when it purchased the property at the foreclosure sale. In state court, the Falk Trust challenged only

---

[7] The Fannie Mae Deed also includes a warranty by Quicksilver that the property is unencumbered. (Compl. ¶ 98, ECF No. 1.) It is unclear whether Fannie Mae asserts a claim under this warranty. Defendants, however, allege that Fannie Mae has asserted such a claim and argue that the claim is barred by the statute of limitations. (See Defs.' Mem. 15, ECF No. 13.) Since the face of the Complaint does not reveal when this cause of action accrued, dismissal is not warranted on a Rule 12(b)(6) motion. See Dickinson, 91 F. Supp. 3d at 763 (explaining that to dismiss a claim based on the statute of limitations on a Rule 12(b)(6) motion, "all facts necessary to show the time bar must clearly appear 'on the face of the complaint'" (quoting Goodman, 494 F.3d at 464)).

Fannie Mae's title as purchaser of the property. Fannie Mae has not alleged that Quicksilver was under any obligation to defend Fannie Mae against such claims. It has therefore failed to state a claim upon which relief can be granted. As Defendants argue, "Fannie Mae, as purchaser, cannot now rely on warranties that Quicksilver made to the lender in the deed of trust." (Defs.' Mem. 15, ECF No. 13.) Accordingly, the Court dismisses Fannie Mae's breach of warranty claim arising out of Quicksilver's failure to defend Fannie Mae against the Falk Trust's suit.

*Claim 6: Piercing the Corporate Veil*

In Fannie Mae's final claim, it seeks to pierce Quicksilver's corporate veil to hold the Falk Trust liable for Quicksilver's alleged wrongdoing. (See Compl. ¶¶ 104–111, ECF No. 1.) Defendants argue that once the Court dismisses Fannie Mae's first five claims, it must also dismiss Fannie Mae's final claim because the claim cannot stand on its own. (Defs.' Mem. 16, ECF No. 13.) Because the Court has not dismissed all of Fannie Mae's first five claims, the Court declines to dismiss the sixth claim.

**C. Res Judicata**

The Court now turns to Defendants' final argument for dismissal, based on the doctrine of res judicata. "[A]n affirmative defense such as res judicata may be raised under Rule 12(b)(6) 'only if it clearly appears on the face of the complaint.'" Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000). However, "a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." Id. North Carolina law governs the issue of res judicata in this case. See In re Heckert, 272 F.3d 253, 257 (4th Cir. 2001).

"Under the doctrine of res judicata or 'claim preclusion,' a final judgment on the

merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." Williams v. Peabody, 719 S.E.2d 88, 92 (N.C. Ct. App. 2011) (quoting Whitacre P'ship v. BioSignia, Inc., 591 S.E.2d 870, 880 (N.C. 2004)). The doctrine serves "to protect litigants from the burden of relitigating previously decided matters and to promote judicial economy by preventing unnecessary litigation." ACC Constr., Inc. v. SunTrust Mortg., Inc., 769 S.E.2d 200, 207 (N.C. Ct. App. 2015) (quoting Holly Farm Foods, Inc. v. Kuykendall, 442 S.E.2d 94, 97 (N.C. Ct. App. 1994)). A litigant must prove three elements to successfully assert the doctrine of res judicata: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits." Id. (quoting Moody v. Able Outdoor, Inc., 609 S.E.2d 259, 262 (N.C. Ct. App. 2005)).

Here, it is undisputed that the state court suit has reached a final judgment on the merits. (See Defs.' Res Judicata Br. 4–5, ECF No. 25; Pl.'s Res Judicata Br. 3, ECF No. 26.) The Court thus begins by considering the second element of the doctrine: whether there is an identity of causes of action between the state court suit and the present suit.

A final judgment in a prior action is conclusive "not only as to all matters actually determined or litigated in the prior proceeding, but also as to all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination." Williams, 719 S.E.2d at 93 (quoting Rodgers Builders, Inc. v. McQueen, 331 S.E.2d 726, 730 (N.C. 1985)). Based on the principle that "all damages incurred as the result of a *single wrong* must be recovered in one lawsuit," the doctrine of res judicata prohibits "subsequent actions which attempt to proceed by asserting a new legal theory or by seeking a different remedy." Tong v. Dunn,

752 S.E.2d 669, 675 (N.C. Ct. App. 2013) (quoting <u>Bockweg v. Anderson</u>, 428 S.E.2d 157, 161, 163 (N.C. 1993)). However, "[w]here a plaintiff has suffered multiple wrongs at the hands of a defendant, a plaintiff may normally bring successive actions, or, at his option, may join several claims together in one lawsuit." <u>Id.</u> (alteration in original) (quoting <u>Bockweg</u>, 428 S.E.2d at 161).

Defendants argue that Fannie Mae's claims in both the state court suit and the present suit arise from a single wrong: Defendants' alleged breach of their duties under the Fannie Mae Note and Fannie Mae Deed. (Defs.' Res Judicata Br. 7, ECF No. 25.) Specifically, Defendants characterize the "wrong" as (1) failing to ensure that the Fannie Mae Deed had a first priority lien position and (2) allowing the Falk Trust to bring an action seeking to enforce its lien. (<u>Id.</u>) Defendants' characterization of the state court suit confuses the causes of action in the state court suit with those in the present suit. In the two suits, the same names appear repeatedly. Not only were Michael Falk and Harry Falk the owners of the company that previously owned the property, but Michael Falk is also the trustee of a trust that loaned money to that previous owner. Similarly, Fannie Mae is not only a lender to the previous owner but also the new owner of the property, having been the highest bidder at the foreclosure sale. It is important, however, to look beyond this overlap in parties to determine whether the two suits involve different causes of action and to identify the matters that are relevant and material to each suit.

Distilling the suits to their core components, it becomes clear that the two suits are distinct. The state court suit involved a recently foreclosed property and a dispute as to the encumbrances on that property. The dispute was between the Falk Trust, as a creditor of the previous property owner, and Fannie Mae, as the new property owner. The issue before

19

the court was whether the foreclosure had extinguished the Falk Trust's lien on the property. (See State Compl. ¶ 43, ECF No. 14-4; State Countercl. 15, ECF No. 13-7.) Because the Falk Trust sought to obtain satisfaction of its note from the new property owner, it would have presumably named as a defendant whoever was the highest bidder at the foreclosure sale. Fannie Mae's position as both the highest bidder and a fellow creditor of the previous owner was not relevant or material to the case. The present suit, by contrast, involves the refinance of a loan and a dispute between the lender and borrower regarding the borrower's conduct before and after closing the loan. (See Compl. ¶¶ 52–103, ECF No. 1.) The alleged wrongdoers in the suit are the Falks and Quicksilver, the borrower. The Falk Trust is named as a defendant only to pierce the corporate veil. (See id. ¶¶ 104–111.) Presumably, Fannie Mae, as the lender, would have attempted to pierce the corporate veil against any entity that allegedly "exercised total dominion and control over Quicksilver," the borrower. (See id. ¶ 107.) The fact that the Falk Trust also held a lien on the property at one point and sought to enforce that lien against Fannie Mae is not relevant and material to the present suit.

The North Carolina Court of Appeals considered an analogous scenario in Tong v. Dunn, 752 S.E.2d 669 (N.C. Ct. App. 2013). Mr. Tong was the founder of a software company. Id. at 670. He was an employee of the company as well as a common shareholder and a member of the board of directors. Id. At one point, the board of directors began exploring opportunities to sell the company. Id. It ultimately accepted an offer that Mr. Tong did not believe was in the best interests of the common shareholders. Id. Due to these concerns, Mr. Tong resigned from the board of directors shortly before the merger was to take place. Id. at 671. Mr. Tong's continued employment, however, was a condition of the merger. Id. at 670–71. To encourage Mr. Tong to stay, the company offered a

20

$300,000 payment in exchange for his agreement to continue employment after the merger. Id. at 671. Mr. Tong agreed. Id. The company, however, did not inform Mr. Tong that to receive the payment, he would also be required to sign a release agreement "extinguishing any claims he had as a common shareholder to challenge the sale" of the company. Id. When Mr. Tong learned of this condition, he refused to sign the release agreement and did not receive his $300,000 payment. Id. Based on these facts, Mr. Tong filed suit against members of the board of directors, among others, asserting claims including fraudulent inducement and negligent misrepresentation. Id. Ten days later, Mr. Tong and forty-seven other common shareholders filed suit alleging that some of the same defendants, who were preferred shareholders and members of the board of directors, breached their fiduciary duties in connection with the merger. Id. at 672. The defendants asserted an affirmative defense of res judicata. Id. at 673.

Reviewing the issue on appeal, the North Carolina Court of Appeals acknowledged that Mr. Tong's claims in both suits "all arose out of the same factual context involving the negotiation and consummation of the merger." Id. at 675. It recognized, however, that "Mr. Tong did not merely change his legal theory or seek a different remedy for a single wrong." Id. at 676. Rather, Mr. Tong's claims in the first action involved "claims arising out of his position as an employee," while the second action involved "a wrong inflicted upon Mr. Tong in his capacity as a common shareholder." Id. The court therefore concluded that the doctrine of res judicata did not bar Mr. Tong's second suit. Id.

In this case, as in Tong, Fannie Mae has suffered distinct wrongs. In the state court suit, Fannie Mae was sued as the new owner of the property after refusing to pay $3.5 million to satisfy a debt owed by the previous owner, and it counterclaimed for a declaration

that it held title to the property free and clear of any prior liens. By contrast, Fannie Mae filed the present suit as a lender, against a borrower, for allegedly making false representations in the loan negotiation process, transferring interests, and failing to defend Fannie Mae's title to the property. Although the facts and parties involved in the two suits may overlap to some extent, the two suits are based on separate causes of action arising out of separate wrongs. While Fannie Mae could have asserted its current claims in the state court suit, it was not required to do so, as the causes of action in this suit are not "relevant and material matters within the scope of the [state court] proceeding." See Williams, 719 S.E.2d at 93. Thus, the doctrine of res judicata does not bar Fannie Mae's present suit.

Defendants cite four cases in support of their position. (See Defs.' Res Judicata Br. 7–8, ECF No. 25.) The North Carolina Court of Appeals found the same four cases distinguishable in Tong. See 752 S.E.2d at 676–77. For the same reasons as articulated by the Court of Appeals, Defendants' cases do not control here. In Skinner v. Quintiles Transnational Corp., an employee filed two actions against her former employer, one for failure to accommodate under federal law and one for retaliation under state law. 606 S.E.2d 191, 192–93 (N.C. Ct. App. 2004). The doctrine of res judicata barred the second action in part because both claims were based on her termination and the second action "merely present[ed] a new legal theory as to why plaintiff was terminated." Id. at 194–95. Unlike Skinner, Fannie Mae's suit does not present new legal theories based on the same causes of action as the state court suit. Fannie Mae's suit is also distinguishable from Gaither Corp. v. Skinner, Moody v. Able Outdoor, Inc., and Fickley v. Greystone Enterprises, Inc. Each of those cases involved actions "for the breach of an entire and indivisible contract," which barred future actions for breach of the same contract. See Gaither, 85 S.E.2d 909, 912 (N.C.

1955) (holding that one breach of contract action based on a failure to perform to certain specifications of the contract precluded a later action involving other specifications of the same contract); <u>Moody</u>, 609 S.E.2d at 263 (barring a third action for breach of a single lease agreement); <u>Fickley</u>, 536 S.E.2d 331, 333 (N.C. Ct. App. 2000) (holding that the plaintiffs were barred from asserting claims under their lease agreements after failing to assert those claims as compulsory counterclaims in a previous suit).  Unlike those cases, the state court suit and present suit do not involve separate claims for the breach of a single contract. Defendants' cited cases therefore do not alter the Court's conclusion that there is no identity of causes of action between the state court suit and the present suit.

Because Defendants have failed to prove the second element of the res judicata doctrine, the Court need not consider the third element—whether the two suits involve an identity of parties or their privies.  Based on a lack of identity of causes of action, the Court concludes that the doctrine of res judicata does not bar Fannie Mae's suit.  Accordingly, Defendants' motion to dismiss based on the doctrine of res judicata is denied.

For the reasons outlined herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (ECF No. 12) is GRANTED IN PART, in that Fannie Mae's breach of warranties claim based on Quicksilver's failure to defend Fannie Mae is DISMISSED, and DENIED IN PART, as to Fannie Mae's remaining claims.

This, the 10th day of December, 2015.

                        /s/ Loretta C. Biggs
                     United States District Judge

23